ASTUGUE v. AMERICAN RAILWAY EX-
PRESS CO.

(December 1, 1930.   Opinion and Decree.)
(January 5, 1931.   Rehearing Refused.)

R. A. Dowling and W. R. Kinsella, of New Orleans, attorneys for plaintiff, appellee.

Hunter C. Leake and Lemle, Moreno & Lemle, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J.   This is a suit by the consignee of a dog expressed from New York to New Orleans, against the American Railway Express Company, a carrier, claiming damages by reason of the death of the dog.

It is alleged that the dog was shipped C.O.D. from New York City; that it was in good health at the time, having been examined by a veterinarian at the point of origin; that upon the arrival of the dog in New Orleans, the consignee requested permission to have the dog examined by a veterinarian before paying the C.O.D. charges, but this was refused by the express company until after he had paid the charges, and taken possession of the dog;

that he took it home on May 4, 1928, at which time it was sick, and died nine days later; and that the illness of the dog was the result of mishandling and negligent exposure of the dog by the defendant.

The defense of the express company was that it was forbidden by its tariffs, approved by the Interstate Commerce Commission to permit an inspection of any C.O.D. shipment without the consent of the shipper; that in this case there was no such consent and, therefore, it could not permit the inspection. The defendant further denied that the dog was in good health when shipped from New York, denied that it was guilty of any mishandling or negligent exposure of the dog, and alleged that the death of the dog was due entirely to natural causes for which it was not responsible.

There was judgment in favor of plaintiff in the sum of $473.48 and defendant has appealed.

It is uncertain whether plaintiff is suing for the amount of the C.O.D. and express charges which he paid to the express company, on the theory that it wrongfully refused to permit him to examine the dog as it should have done, and thereby prevented him from discovering the dog was sick before he paid the charges which he would not have paid if he had had such knowledge; or for the value of the dog on the theory that the defendant was guilty of negligence in handling the dog.

Treating the petition as a suit for the return of the C.O.D. and express charges, it is admitted, by the defendant, that it refused to permit plaintiff to have a veterinarian examine the dog at the point of destination because the tariffs of the Interstate Commerce Commission prohibit it from doing so unless written instructions to that effect are printed or written on the C.O.D. envelope or upon subsequent written authority from the shipper.

The applicable tariff is I. C. No. 3280, a copy of which, duly certified under the seal of the Interstate Commerce Commission is filed in evidence. Section 14(c), page 21 of the tariff, provides:

"Examination, trial, or one partial delivery of C.O.D. shipments will be allowed only when instructions to that effect are written or printed on the package and on the C.O.D. envelope, or are enclosed within the C.O.D. envelope which accompanies the shipment, or upon subsequent written authority from the shipper endorsed by the agent at shipping point."

Such instructions were not written or printed on the package or C.O.D. envelope and, therefore, the express company was required to refuse the inspection as it was obligatory upon it to abide by the rule established in the tariff on file with the Interstate Commerce Commission.

In this situation, the consignee had the option of doing one of two things, paying the charges and accepting the shipment, or getting permission from the shipper to make an inspection. Plaintiff chose to exercise the first option. He paid the charges and took possession of the dog and he cannot now sue the express company to recover this money on the theory that it should have permitted an inspection and was wrongfully deprived of his right to do so.

However, treating the petition as a suit for the value of the dog, the record shows that the plaintiff purchased two greyhound dogs, which were shipped from Tipperary, Ireland. After an ocean voyage they arrived in New York whence they were crated and shipped to New Orleans on or

about May 1, 1928, and arrived in New Orleans on May 4, 1928. The plaintiff was notified of the arrival of the dogs and requested permission to examine them before accepting them, which permission was refused as above recited.

Plaintiff and his witness testified that the dog appeared to be sick the day it was accepted, May 4, 1928. Defendant's witnesses state that the dog appeared to be well. It is conceded that neither dog showed any evidence of rough handling or injuries. One of the dogs is admitted to have been in good sound condition and health at the time of its arrival and it further appears that the dogs were crated and shipped together.

It is admitted that on May 9, 1928, at 3:30 p. m. the express company received notice from the plaintiff that the dog was sick. Dr. Kyle, a veterinarian, a witness for the plaintiff, was called in to see the dog on May 7, 1928, in the afternoon and he testified that he found the dog suffering from high fever, with a temperature of 104 degrees and very weak; that fever in such cases usually comes on within 24 hours and that the dog died of bronchial pneumonia. He further testified that the dog died of natural causes and that the disease was common in this locality and might attack a dog whether it had been shipped or not.

Dr. Upton, a veterinarian, also a witness for the plaintiff, testified that he saw the dog on May 11, 1928, and found it suffering from bronchial pneumonia and distemper from which it died; that he found no evidence of rough handling or injury and corroborated the testimony of Dr. Kyle that the dog died of natural causes and that the disease was common in this climate.

There is some doubt as to whether plaintiff bore the burden of showing that his loss or damage was caused by the negligence of the carrier because of a provision in the bill of lading to the effect that the shipper agreed, as a condition precedent, to recovery of damages, to prove that the carrier was at fault. But, treating the case as if the carrier bore the burden of proving that the death of the dog was not caused through its negligence or fault, which is the general rule in such cases, we pass to a consideration of the question of whether or not the evidence shows that the carrier was free from fault in causing the dog's death.

While it is true, that the defendant did not offer any evidence to show that the trip was uneventful nevertheless it did offer evidence tending to prove that the dog was in apparent sound good health at the time it arrived in New Orleans and was tendered to the plaintiff. The testimony of the veterinarians who were witnesses for the plaintiff, show that the dog bore no evidence of injury or rough handling. It is admitted by the plaintiff that the other dog was uninjured and in good condition when accepted. The only evidence we have tending to show that the dog was sick at the time of its delivery to the plaintiff is the testimony of the plaintiff and one witness, who state that the dog appeared to be sick. The evidence of Dr. Kyle, who saw the dog on the afternoon of May 7, 1928, was to the effect that fever in such cases evidences itself within 24 hours after contracting the disease. If this be true, it seems to us that the dog contracted pneumonia after it was delivered to the plaintiff.

Section 5 of the bill of lading specifically provides that the carrier would not be liable for "damages arising from the condition of the animals themselves." The dis-

ease which killed the dog is shown to have been common in this climate and a natural one and, therefore, comes within this exception or limitation of liability.

We conclude that the evidence establishes that there was no causal connection between the disease contracted by the dog which caused its death and any fault or negligence on the part of the carrier. This risk was expressly assumed by the shipper under section 5 of the bill of lading.

For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and it is now ordered that there be judgment in favor of the defendant, the American Railway Express Company, dismissing the plaintiff's suit at his cost.